UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMARA R. MERKLEY,

                              Plaintiff,

v.                                                          7:16-CV-1394
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN NY           VICTORIA M. ESPOSITO, ESQ.
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.                    DAVID B. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tamara R. Merkley

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 10, 11.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and

Defendant's motion for judgment on the pleadings is denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1975, making her 37 years old at the date she filed her application and 39 years old at the date of the ALJ's decision.  Plaintiff reported obtaining her GED.  The ALJ found she has past work as a landscape laborer, personal care aide, and order filler.  Generally, Plaintiff alleges disability due to fibromyalgia, bone spurs, arthritis, depression, anemia, and bowel problems.

### B.    Procedural History

Plaintiff applied for Supplemental Security Income on February 4, 2013.  Plaintiff's application was initially denied on June 26, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ John M. Lischak on September 8, 2014, and again on April 17, 2015.  On May 16, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 17-27.)[1]  On September 26, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 19-25.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant period.  (T. 19.)  Second, the ALJ found that Plaintiff's fibromyalgia is a severe impairment, while anemia, bowel problems, migraine headaches, bone

---

[1]      The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

spurs, anxiety, and depression are not severe impairments. (T. 20-21.) Third, the ALJ found that Plaintiff's severe impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 21.) Specifically, the ALJ considered Listing 1.04 (disorders of the spine). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 C.F.R. 416.967(a)." (T. 21.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work with a limitation to sedentary work. (T. 25.) Sixth, the ALJ found that there are no non-exertional or other limitations that would erode the occupational base of sedentary work and therefore Medical-Vocational Rule 201.27 directs a finding of not disabled. (T. 25.)

**D.      The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to find depression and anxiety to be severe impairments. (Dkt. No. 14, at 16-17 [Pl. Mem. of Law].) Specifically, Plaintiff argues that the opinion from treating psychiatrist Nedim Hukovic, M.D., establishes not only that these impairments are severe but that Plaintiff meets Listing 12.04. (*Id.*) Plaintiff argues that the failure to find these impairments severe is harmful because the ALJ failed to incorporate any related limitations into the RFC. (Dkt. No. 14, at 17 [Pl. Mem. of Law].)

Second, Plaintiff argues that the RFC finding is legally erroneous and not supported by substantial evidence. (Dkt. No. 14, at 17-18 [Pl. Mem. of Law].) Specifically, Plaintiff argues that the failure to perform a function-by-function analysis was error meriting reversal. (Dkt. No. 14, at 17 [Pl. Mem. of Law].) Plaintiff also argues that the ALJ failed to explain why he did not adopt the full range of limitations opined by consultative examiner Elke Lorensen, M.D., who found marked limitations in the abilities to bend, lift, and reach. (Dkt. No. 14, at 17-18 [Pl.

Mem. of Law].)  Plaintiff additionally argues that the ALJ misinterpreted the opinion from treating Nurse Practitioner Laurie Brown and misunderstood the requirements of sedentary work. (Dkt. No. 14, at 18 [Pl. Mem. of Law].)

Third, Plaintiff argues that the ALJ erred when assessing credibility because he provided only boilerplate statements rather than meaningful reasons to support that finding.  (Dkt. No. 14, at 19-21 [Pl. Mem. of Law].)  Plaintiff argues that her reported daily activities and the medical evidence support the credibility of her allegations.  (*Id.*)

Fourth, Plaintiff argues that the ALJ erred in affording only little weight to the opinion from Nurse Practitioner Brown, which Plaintiff asserts is consistent with the findings of the other medical sources in the treatment record.  (Dkt. No. 14, at 21-22 [Pl. Mem. of Law].)  Plaintiff also argues that the ALJ erred in failing to afford controlling weight to the opinion from treating psychiatrist Dr. Hukovic, which she argues is consistent with the other treatment evidence and Plaintiff's symptom reports.  (Dkt. No. 14, at 22-23 [Pl. Mem. of Law].)

Fifth, Plaintiff argues that the Step Five finding is not supported by substantial evidence because the ALJ improperly relied on the Medical-Vocational Guidelines rather than testimony from the vocational expert despite the presence of non-exertional limitations.  (Dkt. No. 14, at 23-24 [Pl. Mem. of Law].)

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  First, in response to Plaintiff's first argument, Defendant argues that the ALJ's finding regarding the severity of anxiety and depression is supported by substantial evidence. (Dkt. No. 15, at 4-9 [Def. Mem. of Law].)  Specifically, Defendant argues that all the opinion evidence other than Dr. Hukovic's rejected opinion supports the ALJ's finding that these

impairments did not impose limitations consistent with a severe impairment. (Dkt. No. 15, at 6-7 [Def. Mem. of Law].)

Second, in response to Plaintiff's second and fourth arguments, Defendant argues that the RFC finding is supported by substantial evidence. (Dkt. No. 15, at 9-17 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ properly weighed the opinion evidence. (Dkt. No. 15, at 11-17 [Def. Mem. of Law].) Defendant argues that the ALJ reasonably interpreted the limitations in Dr. Lorensen's opinion as indicative of an ability to perform sedentary work. (Dkt. No. 15, at 11-12 [Def. Mem. of Law].) Defendant also argues that the ALJ correctly determined that the opinion of medical expert Louis Fuchs, M.D., while afforded little weight, did not suggest that Plaintiff was unable to perform sedentary work. (Dkt. No. 15, at 12-13 [Def. Mem. of Law].) Defendant additionally argues that the ALJ appropriately afforded little weight to the opinion from Nurse Practitioner Brown, which was no more restrictive than the RFC other than the limitation for sitting. (Dkt. No. 15, at 13-14 [Def. Mem. of Law].) Defendant also argues that the ALJ properly rejected the opinions from Dr. Hukovic because they were based on Plaintiff's subjective reports rather than objective evidence and because Dr. Hukovic had only seen Plaintiff once between her initial evaluation and when he rendered his opinion. (Dkt. No. 15, at 7-8, 16-17 [Def. Mem. of Law].)

Third, in response to Plaintiff's third argument, Defendant argues that the credibility finding was supported by clear reasons that show he properly considered credibility according to the appropriate legal standards. (Dkt. No. 15, at 18-22 [Def. Mem. of Law].) Specifically, Defendant argues that the ALJ extensively detailed and considered Plaintiff's subjective reports, considered her daily activities that were inconsistent with her alleged limitations, and considered

factors such as her course of treatment and the effect of that treatment.  (Dkt. No. 15, at 19-21 [Def. Mem. of Law].)

Fourth, in response to Plaintiff's fifth argument, Defendant argues that the Step Five finding is supported by substantial evidence due to the ALJ's reliance on the Medical-Vocational Guidelines because the ALJ appropriately found that the evidence as a whole did not support non-exertional limitations that needed to be accounted for in the RFC.  (Dkt. No. 15, at 22-23 [Def. Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.**     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the Step Two Finding Regarding Plaintiff's Mental Impairments is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 4-9 [Def. Mem. of Law].) To those reasons, the Court adds the following analysis.

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)). "Although the

Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor*, 32 F.Supp.3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

Plaintiff's argument that depression and anxiety should have been considered severe impairments relies solely on the opinion of Dr. Hukovic. On March 26, 2015, Dr. Hukovic indicated in a check-box opinion that Plaintiff had marked limitations in her abilities to understand, remember and carry out detailed instructions, make judgments on simple work-related decisions, and respond appropriately to work pressures in a routine work setting, with additional moderate limitations in her abilities to understand, remember, and carry out short and simple instructions, interact appropriately with supervisors, and respond appropriately to changes in a routine work setting. (T. 372-73.) Dr. Hukovic also provided an opinion form related to Listing 12.04 for affective disorders in which Dr. Hukovic noted Plaintiff had symptoms and marked limitations which would indicate she meets the criteria of that listing.

The ALJ afforded no weight to Dr. Hukovic's opinions, finding they were "no more than a listing of the claimant's subjective allegations" based on very limited treatment contact consisting of an initial evaluation and a brief medication management appointment. (T. 20-21.) The ALJ's reasons for rejecting Dr. Hukovic's opinions are supported by substantial evidence. Notably, the explanations Dr. Hukovic included with his opinions support the ALJ's findings that they were based on Plaintiff's subjective reports rather than Dr. Hukovic's independent

professional judgment. When asked what findings supported the opined limitations, Dr. Hukovic noted that "[p]atient reports that preoccupation with worries and anxious thoughts negatively impacts her ability to focus on tasks and instructions; she reports being very distracted by her thoughts," and that "[p]atient reports that she treats supervisors poorly/inappropriately if she does not feel she is treated well—also reports inability to handle work pressures in healthy ways." (T. 372-73.) These statements strongly suggest that Dr. Hukovic merely accepted Plaintiff's reports when rendering this opinion. A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less weight to a medical opinion, even from a treating physician. *See Aldrich v. Astrue,* 5:08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence); *Dailey v. Comm'r of Soc. Sec.,* No. 5:14-CV-1518, 2016 WL 922261, at *5 (N.D.N.Y. Feb. 18, 2016) (noting that "[a]n ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence") (citing *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *Major v. Astrue*, No. 12-CV-304S, 2013 WL 2296396, at *5 (W.D.N.Y. May 24, 2013); *Ford v. Astrue*, No. 1:06-CV-1227, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010)).

While Dr. Hukovic does indicate that reviewers should refer to clinical records from Gouverneur Wellness Center at the end of the Listing 12.04 opinion, these records do not show findings supportive of the limitations opined in either opinion. At an evaluation on November 25, 2014, Dr. Hukovic observed that Plaintiff was well-groomed, visibly anxious, and tearful at times though she was able to calm down after a few minutes. (T. 343.) She had a fairly

organized thought process, normal speech, a fair ability to focus, no difficulties spelling 'world' forward or backward, and the ability to abstract and interpret a proverb. (*Id.*) Dr. Hukovic noted she reported a sad mood and memory problems, but she was observed to recall three of three objects immediately, two of three from her recent memory, and had preserved remote memory. (*Id.*) A therapy note from Emily Petrus on this same date showed that Plaintiff was alert and oriented with intermittent eye contact, clear and understandable speech that was elevated in rate but normal in tone and volume, low average to average intellectual functioning and fair/poor insight into her conditions. (T. 354.) Ms. Petrus also noted Plaintiff reported memory difficulties and inability to focus, but did not make any objective findings related to Plaintiff's memory and focus. (*Id.*) On November 28, 2014, Ms. Petrus observed that Plaintiff was alert and oriented with intermittent eye contact, and clear and understandable speech that was elevated in rate but normal in tone and volume. (T. 345.) These treatment notes, which show minimal mental health abnormalities, do not support the extensive limitations in Dr. Hukovic's opinion. Rather, the minimal findings and minimal mental health treatment support the ALJ's finding that Plaintiff's mental impairments are not severe. Because the ALJ provided reasons supported by substantial evidence for affording no weight to Dr. Hukovic's opinion, Plaintiff's arguments that this opinion required the ALJ to find her mental impairments severe must be rejected.

In addition to the treatment notes that do not reveal symptoms that would impose more than minimal work-related limitations of functioning, the other opinion evidence supports the ALJ's severity finding. On June 14, 2013, consultative examiner Dennis Noia, Ph.D., noted fairly normal mental status findings and opined that Plaintiff's mental impairments did not impose any limitations on her work-related functioning. (T. 279-81.) On June 19, 2013, State Agency psychological consultant L. Hoffman found Plaintiff's mental impairments non-severe.

(T. 102-03.) Nurse Practitioner Brown noted on August 15, 2014, that anxiety and depression were stable and would not interfere with her work abilities. (T. 318.) Nurse Practitioner Brown more specifically opined that these impairments would not cause any restriction on Plaintiff's abilities to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers, and work pressures in a work setting. (T. 319-20.) The ALJ noted these opinions in the written decision when discussing the Step Two finding, suggesting he relied on them as support for that finding. (T. 19-20.)

Because the ALJ properly declined to rely on Dr. Hukovic's opinion, and because the medical and opinion evidence is consistent with the ALJ's finding, the ALJ did not err in finding anxiety and depression were non-severe impairments. Remand is not warranted on this basis.

### B.    Whether the RFC Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the negative for some of the reasons in Plaintiff's memorandum of law. (Dkt. No. 14, at 17-18 [Pl. Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 416.927(c)(1)-(6).  Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources.  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

---

[2]     Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

Plaintiff makes multiple arguments related to the RFC finding: (1) the ALJ erred in affording little weight to the opinion of physical functioning from Nurse Practitioner Brown; (2) the ALJ failed to provide an explanation for failing to incorporate into the RFC marked limitations opined by consultative examiner Dr. Lorensen despite appearing to rely on that opinion; and (3) the ALJ erred in failing to provide a specific function-by-function assessment. (T. 17-18, 21-22.)

First, Plaintiff argues that the ALJ erred in affording little weight to the opinion from Nurse Practitioner Brown, asserting that Nurse Practitioner Brown's opinion was entitled to extra consideration given Plaintiff's location in a rural area and because she had a treatment relationship with Plaintiff and her opinion was consistent with the findings of other physicians who found she had significant symptoms of fibromyalgia. (Dkt. No. 14, at 21-22 [Pl. Mem. of Law].) On August 15, 2014, Nurse Practitioner Brown opined that Plaintiff could sit four hours total, stand and walk two hours each, lift and carry up to 50 pounds occasionally and up to ten pounds frequently, occasionally bend and squat, never crawl and climb, and was able to use her hands for repetitive actions. (T. 317-18.) The ALJ afforded Nurse Practitioner Brown's opinion little weight because she had been treating Plaintiff for only five months at the time she rendered her opinion, her treatment notes did not show a basis for the sitting limitation, and she is not a medically acceptable source according to the regulations. (T. 23.)

The ALJ's decision to afford little weight to this opinion, particularly the sitting limitation, is supported by substantial evidence because, as the ALJ noted, nothing in Nurse Practitioner Brown's treatment notes (or the other evidence) supports such a restriction in the ability to sit. X-rays of the cervical, thoracic, and lumbar spine and sacroiliac joints from April 17, 2012, were unremarkable other than a notation of slightly diminished range of motion in the

cervical spine. (T. 303-06.) On April 26, 2012, she was observed to have limited cervical spine range of motion secondary to pain, cervical and lumbar area tenderness, sacroiliac joint tenderness, normal straight leg raising, and otherwise normal range of motion, strength, and sensation. (T. 273.) On July 5, 2012, Plaintiff was observed to have tenderness in the cervical and lumbar triangle regions, tautness over the trapezius muscles, mild crepitus with passive range of motion in the shoulders, greater than 11 fibromyalgia trigger points, and otherwise good range of motion. (T. 270.) On June 14, 2013, consultative examiner Dr. Lorensen observed a normal gait, ability to walk on her toes without difficulty, a 30 percent squat ability, negative straight leg raising, full range motion other than decreased cervical and lumbar range of motion, fibromyalgia trigger points, and normal sensation and strength. (T. 283-84.) On April 3, 2014, Nurse Practitioner Brown observed Plaintiff's fibromyalgia pain had been well managed on her current medication, which included hydrocodone. (T. 313.) Nurse Practitioner Brown observed joint and muscle tenderness, particularly in the back with palpation. (T. 314-15.) On July 2, 2014, Nurse Practitioner Brown noted Plaintiff's pain was tolerable with hydrocodone management, and that Plaintiff reported feeling fairly well with her current medications. (T. 310.) The treatment evidence, while showing symptoms related to fibromyalgia, therefore does not establish specifically that Plaintiff experienced limitations in her ability to sit, particularly as she reported her medication improved her pain. Notably, although Dr. Lorensen observed decreased range of motion and fibromyalgia trigger points, she did not include any limitation on the ability to sit in her opinion. (T. 283-85.) Because the ALJ found Nurse Practitioner Brown's sitting limitation in particular was not substantiated by the treatment notes, the ALJ has provided an adequate reason for affording little weight to this opinion. *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.")

(citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Aldrich v. Astrue,* 08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. § 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).  Notably, other than the sitting limitation, there is nothing in Nurse Practitioner Brown's opinion that would suggest Plaintiff cannot perform sedentary work.[3]

Plaintiff's corollary argument that remand is warranted because the ALJ's discussion of Nurse Practitioner Brown's opinion showed he had an erroneous concept of the demands of sedentary work is also not persuasive.  (Dkt. No. 14, at 18 [Pl. Mem. of Law].)  When asserting that Nurse Practitioner Brown's opinion supported an ability to perform at least sedentary work, the ALJ stated that "[w]hile [sedentary] work normally requires the ability to sit for about 6 hours, given normal breaks, a finding that the claimant can sit 4 hours does not mean she could not sit for about 6 hours with breaks."  (T. 23.)  The Court agrees with Plaintiff that this rationale

_____

[3]     Nurse Practitioner Brown did opine Plaintiff could only occasionally bend and squat and never crawl and climb, but these postural limitations would not impact the ability to perform a significant number of sedentary jobs.  *See* SSR 96-9p, 1996 WL 374185, at *7-8 (July 2, 1996) (noting that postural limitations do not usually erode the occupational base of unskilled sedentary work because they are not usually required for that work).  Consequently, although these limitations are more extensive than the RFC accounted for, they would not themselves undermine the validity of the ALJ's Step Five finding.

is questionable at best, and it appears to represent a misinterpretation of Nurse Practitioner Brown's opinion, as she opined Plaintiff could sit for a total of four hours in an eight-hour workday, not that Plaintiff could sit for four hours exclusive of time for breaks. (T. 317.) However, this Court does not agree that this attempt to make Nurse Practitioner Brown's opinion consistent with sedentary work necessitates remand because even a proper consideration of the sitting limitation would not have altered the ALJ's findings. The ALJ also afforded little weight to this opinion based on additional reasons, including the length and nature of the treatment relationship and a lack of support for the sitting limitation, reasons which provide substantial support for the ALJ's rejection of this opinion regardless of whether he made unsupported assertions that this opinion was consistent with sedentary work. Plaintiff's argument that the ALJ erred in failing to afford greater weight to Nurse Practitioner Brown's opinion must therefore be rejected.

Second, Plaintiff argues that the ALJ failed to explain why he rejected the marked limitations in Dr. Lorensen's opinion. (Dkt. No. 14, at 17-18 [Pl. Mem. of Law].) After conducting a physical examination, Dr. Lorensen opined that Plaintiff had moderate restrictions in turning her head sideways, looking upward, and squatting as well as marked limitations in bending, lifting, and reaching. (T. 285.) Plaintiff argues that the ALJ's failure to explain how the marked limitations in particular were consistent with an ability to perform sedentary work renders the ALJ's findings inadequate. In response, Defendant argues that "[n]othing in Dr. Lorensen's opinion is inconsistent with [the] demands [of sedentary work] as the ALJ concluded," and asserts that this Court must uphold the ALJ's rational interpretation of this opinion evidence even if the "slightest hint of ambiguity" is present. (Dkt. No. 15, at 11-12 [Def. Mem. of Law].)

However, the problem in this instance is that too much ambiguity exists in the ALJ's explanation (or lack thereof) of his reliance on Dr. Lorensen's opinion. The only statement the ALJ made regarding the weight afforded to this opinion was his assertion that it "would permit performance of at least sedentary work." (T. 23.) The ALJ cannot simply assert that an opinion is consistent with his findings without providing some degree of explanation or support as to why his assertion is consistent with the evidence and legal standards. The ALJ's failure to provide any explanation as to how he reached the conclusion that these limitations were consistent with sedentary work is compounded by the fact that he did not even provide an explicit indication of the weight he afforded to Dr. Lorensen's opinion. This failure to state what weight he afforded this opinion makes it impossible to review whether the ALJ's consideration of this opinion was consistent with the standards outlined in the regulations because there is no clear indication of the degree to which the ALJ relied on it. Consequently, the ALJ has not met his duty to set forth his reasons "with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587).

This Court is most troubled by the ALJ's unexplained implicit rejection of the marked limitation for reaching. The record contains some support for this limitation. Dr. Lorensen

observed decreased cervical range of motion and fibromyalgia trigger points, including in her bilateral trapezius, bilateral supraspinatus, and bilateral anterior cervical regions. (T. 284.) Plaintiff was observed to have limited cervical spine range of motion secondary to pain on April 26, 2012. (T. 273.) On July 5, 2012, she was observed to have tenderness in her cervical spine region, tautness over the trapezius muscles, and mild crepitus in the shoulders. (T. 270.) On April 3, 2014, she was observed to have joint and muscle tenderness. (T. 315.)

The ALJ found at Step Five that Plaintiff remained capable of performing the broad occupational base of sedentary work, but it is not clear what impact a marked restriction on the ability to reach would have on that occupational base. SSR 96-9p notes that sedentary unskilled jobs require good use of the hands and fingers, but is silent regarding what impact such a significant restriction on the ability to reach would have on that occupational base. *See* SSR 96-9p, 1996 WL 374185, at *8. This Court and the Second Circuit, however, have noted that reaching is "'required in almost all jobs'" and "a reaching limitation 'may eliminate a large number of occupations a person could otherwise do.'" *Gishey v. Colvin*, No. 8:13-CV-1036, 2015 WL 1505674 at *8 (N.D.N.Y. Mar. 31, 2015) (quoting *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013)). Consequently, whether or not the ALJ properly rejected this limitation could have a material impact on the validity of the ALJ's Step Five finding, yet the ALJ provided no explanation as to whether he found this limitation unsupported or why. The ALJ's failure to explain his findings regarding Dr. Lorensen's opinion is therefore not harmless error in this instance.

Additionally, contrary to Defendant's contention that this Court must accept the ALJ's findings in the face of ambiguity, we have remanded previously in situations similar to the one presented here. In *Rowe v. Colvin*, 166 F. Supp. 3d 234 (N.D.N.Y. 2016), this Court remanded

19

where the ALJ concluded the plaintiff could perform a full range of sedentary work despite

explicitly adopting a consultative examiner's opinion that the plaintiff had marked limitations in

bending, neck motion, reaching, pushing, pulling, lifting, and carrying. *Rowe*, 166 F. Supp. 3d at

239-40.  The Court noted that the ALJ "failed to explain the discrepancy between [his] adoption

of Dr. Magurno's findings and his RFC finding (which explicitly rejected these non-exertional

impairments" and that "[a]s a result, the Court cannot be certain the [ALJ] applied the correct

legal principles, and thus remand is required to sort out the apparent contradiction." *Id.* at 240.

In the present case, the ambiguity is even greater because it is not even certain to what extent the

ALJ did rely on Dr. Lorensen's opinion due to his complete failure to provide any explanation

other than a bare assertion that the opinion supported an ability to perform sedentary work.  It is

simply not clear whether the ALJ applied the proper scrutiny and factors required by the

regulations when considering Dr. Lorensen's opinion.  Consequently, remand is warranted.

     Third, Plaintiff argues that the ALJ erred in failing to provide a specific function-by-

function analysis.  (Dkt. No. 14, at 17 [Pl. Mem. of Law].)  The Second Circuit has found that

the failure to provide a function-by-function analysis is not a *per se* ground for remand, noting

that "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and

restrictions affords an adequate basis for meaningful judicial review, applies the proper legal

standards, and is supported by substantial evidence such that additional analysis would be

unnecessary or superfluous, [] remand is not necessary merely because an explicit function-by-

function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 176-77 (2d Cir. 2013)

(collecting case from other circuit courts that have declined to adopt a *per se* rule).  The Second

Circuit did note that remand might be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki*, 729 F.3d at 177 (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

In this case, there are inadequacies in the ALJ's analysis that frustrate meaningful review, most notably being the lack of clear explanation regarding the treatment of Dr. Lorensen's opinion as already discussed in detail previously. Given the need for further proceedings to properly consider that opinion and the questions that error raises about the validity of the credibility and Step Five findings, on remand the ALJ should take care to provide a clearer explanation of the basis for his findings related to Plaintiff's specific functional abilities.

For the above reasons, remand is warranted for the ALJ to provide a proper analysis and explanation of the weight afforded to Dr. Lorensen's opinion and to provide clearer findings regarding how he reached the conclusion that Plaintiff remains able to perform the specific functions required for sedentary work.

### C. Whether the Credibility Finding is Supported By Substantial Evidence

Due to the errors already identified and the impact they may have on the credibility finding, the ALJ should reassess Plaintiff's credibility on remand.

### D. Whether the Step Five Finding is Supported By Substantial Evidence

Due to the errors in weighing Dr. Lorensen's opinion, in particular the failure to explain why he implicitly rejected the marked limitation for reaching, the ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy, and should consult a vocational expert for testimony if warranted by the findings on remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**DENIED**; and it is further

**ORDERED** that this matter be **REMANDED** for further administrative proceedings

consistent with this Decision and Order pursuant to Sentence Four of 42 U.S.C. 405(g).

Dated: October 10, 2017
       Syracuse, New York

                           Hon. Glenn T. Suddaby
                           Chief U.S. District Judge